Your honors, counsel, may it please the court, I'm sorry, I'm ahead of myself, this case arises from an unopposed motion that was first granted by the district court, then denied not sua sponte, and then a motion to reconsider was denied for the same reasons. The magistrate did not think that the action authorized by the, called for by the unopposed motion could be authorized. The district court should be reversed. In the first place, this court has jurisdiction over the matter, because it's ancillary to the main claim, which was over the benefits due plaintiff. No conflict between plaintiff and her attorney is necessary. There was a you just a factual question. I know it's a bit outside the record, but I understand that in April 2020, the, you received $4,925.21 under 406A. Are those funds yet to be collected? Correct. No, I haven't been paid that amount. We've, we've stayed that order. Okay. So here's my question for you. There's no doubt that what the district court did is an authorized way of doing this. And if you look at the Tenth Circuit's Martinez case, I believe that's the one, it's actually, I mean, at least as far as the Tenth Circuit is concerned, what the district court did was the better approach to it. So you seem to me to be making a very to do it the way you wanted it done, having the Social Security Administration hang on to the full 25%, $14,515. You want it done in a different way. But I don't see any hint that the district judge, or it's actually the magistrate judge, was inclined to do that. So I don't know what harm there was in any legal misapprehension that may have happened. Well, the harm is that the way set forth in the motion is the way that it should be done. But most courts don't agree with you there, and the Social Security Administration doesn't agree with you there. I think the most the, the commissioner is willing to say is what you want is an option, and maybe not even the best option. But the commissioner seems to be in no way agreeing with your contention that your system is the only one. But the commissioner's own regulations call for direct payment to plaintiff and to me, and there's no way that direct payment can be affected if the refund of each of these must be literal by cash or check. But I don't see why what the, what happened here isn't a very transparent way of wrapping everything up. There's an award. It goes to you under the statute and regulations. You refund to your client the appropriate amount, and then if some later payment becomes due between you and your client, that's, that's for you to resolve with your client. That's not direct payment. It is direct payment of the first part. It's just that there's a new award under 406A. Direct payment will not, direct payment is supposed to be for both plaintiff and me. Now, if the EJF fee is given, if I give the EJF fee directly to plaintiff, that's not direct payment. That's indirect payment. And then I'm expected to get whatever fraction of the what's withhold from back from, back from plaintiff. That's not direct either. Mr. Horne, let me, let me try. My sense is I have the same concern that Judge Wood may have. And let me just try to put it to you this way. I think, I think what you're arguing is the reason that this is better, that netting is better, is because it's actually most efficient. And it serves the purpose of ensuring without a lot of hassle or delays or what have you, that you are paid in full. That your fee agreement with your client is fully respected. And that there's not a whole bunch of multiple steps that you have to go through to collect. That's what I, and that, that argument makes really good sense to me. But what, what I can't figure out is why, what the district court or Magistrate Cox more specifically ordered is unlawful under either the Equal Access to Justice Act or any social security law. Well, it's unlawful when you put the two statutes together and you look at the Commissioner's regulations, which call for direct payment. The Magistrate's order violated the canon. So we have to conclude, we have to conclude that the Commissioner's, the Commissioner's regulations supersede and demonstrate the illegality of what Congress wrote in the Equal Access to Justice Act? No, they interpret it for direct payment. The problem is- What's the harm, what's the harm of doing it in any of the ways as long as everybody gets paid? The, the harm is the delay in payment and the risk in letting the money go through the hands of plaintiff and the attorney. Was there a harm? Is there a harm? In this case, was there a harm? Is there a harm, if you had? Not yet. Let's put it this, look at it this way. You're, if I take each of these, I'm responsible for them. As it stands, the U.S. government is responsible for them. Wouldn't you want money that was due you in the hands of the U.S. government rather than in the hands of a private individual? I don't understand, Mr. Horn. Maybe this is really neither here nor there, but if your real concern is insecurity of the funds in the hands of your client, who might fall on economically difficult times or whatever, I don't know why that can't be the subject of negotiation in advance when, when the retainer agreement is, is entered into. So you'll get, you know, the 14, 5, 15, and perhaps instead of paying over to the client, there's an escrow or something. I think you're, you're making, you're putting the commissioner in a position that the commissioner quite evidently doesn't think is required for it to be in, even if it's permissible. The statutory scheme makes the commissioner the bank, the paymaster. And the commissioner says no. I mean, they could be, but, but there are even some disadvantages they point out to this bank function. If the client should die before some of those funds come to them, collection would be very difficult in that circumstance. I think, no, it's, it's if the funds get to, to the claimant and then claimant dies, that, that presents the problem. If, if I forward the agent fee to claimant and claimant dies, there are no funds coming in to, to see to it that that fee is that the portion of that fee that winds up of a 406A fee gets paid to me. It's gone. If there are no benefits coming in, it's gone. The, the standing, nobody has more standing in, on this issue than plaintiff and I. And as I said, the, the, the court says, for example, with response to your first question, Judge Wood, there is simply no authority that would allow the court to implement the scheme counsel wishes to effectuate. So the court was wrong about the law and an error of law is an abuse of discretion. That's why the case should be reversed and remanded. If I can help the court with any other questions. Thank you. Mr. Scoggins. May it please the court. My name's Jason Scoggins. I'm representing the commissioner of social security. I'd like to start by addressing a few of the points Mr. Horne made in his arguments. First, about what he characterizes the commissioner's regulations. I believe he's referring to our internal employee handbook, which is known as the palms. This is designed for field offices and processing centers who deal with claims under the acts. They're not regulations. They're not intended to instruct our office that pays EJ fees. Those are actually paid by the same office that basically pays our power bill and they're certainly not intended to provide instruction to the federal courts. So direct payment is a term of art for payment of fees out of the past due benefits. The statutory language in 406b1 is that we certify the amount of such fee for payment to the attorney out of the past due benefits. That has nothing to do with the EJ fees. The EJ fees are paid by the government out of the social security administration's appropriations. Likewise, Mr. Horne refers to the fact that we make payments to beneficiaries like Ms. O'Donnell via direct deposit, which is the same method that tens of millions of Americans use to receive their paycheck. However, that section of the palms doesn't address anything about EJ refunds at all because the savings clause assigns to the attorney the responsibility of making the refund of EJ fees and those monies are not benefits under the social security act. There's nothing in our internal employee handbook that says employees are entitled to netting, although we don't have, you know, concerns about the practice as long as the text of the court order authorizing it is clear. What our handbook does say is basically just repeats the text of the savings clause in section GN03990.040. The attorney must refund the claim at the amount of the smaller fee. So in our opinion, Mr. Horne's argument based on our employee handbook is based on a somewhat selective reading of certain sections of the handbook. To respond to Judge Wood's comment, I think both Mr. Horne and I brought up scenarios involving the death of a beneficiary soon after the 406B fee was awarded or the past due benefits were awarded. Under Title 16, which is the Supplemental Security Income Program, we have to wait often 12 months to pay most of the past due benefits to the beneficiary. That's required by our regulations and I believe by an act of Congress. So the point we made in the brief was if the beneficiary dies prior to that time, often we can't pay those past due benefits to anyone. We can't pay them to the beneficiary's estate under Title 16. And so the point we made on page 20 of our brief was in the unfortunate event the beneficiary dies within that time period, under Mr. Horne's netting approach, yes, netting may have created more past due benefits available for payment to the beneficiary, but we're not allowed to pay them. Because of the beneficiary's death. In contrast, if the court awards a straight 406B fee without netting, we pay the 406B fee and the beneficiary passes away, Mr. Horne or whoever the attorney is can still write that EJRA refund to the beneficiary's estate because the EJRA refund isn't subject to this regulation that says we can't pay past due benefits under Title 16 to the beneficiary's estate. In that case, Mr. Horne would need to write the check for the EJRA refund to the estate. He could also ask for any fees that the deceased beneficiary asks from the estate. So he still does have an option to attempt to collect those fees from the deceased beneficiary's estate. It seems like an unduly complicated system, I have to say, to have all of these different sources of fees, but you're obviously all stuck with it. That's my comment. Yes, Your Honor. It does, the fact that the 406A fees are awarded by the agency and the 406B fee is awarded by the court, you know, does sometimes create various complexities and complications, but you're right, Your Honor. It's what Congress has designed and lessened until they change that. That's what Mr. Horne and the agency will have to muddle through. Right. Anything further, Counsel? No, Your Honor, unless the court had any other questions I could answer. No. All right, Mr. Horne? The court should consider that the regulations, the POMs that call for direct payment are are interpretations of the statutes that deserve some deference under Chevron. And also the court should consider that Smith v. Bowen, 1987 case, which discusses the history of the 406B, says that it's to make payment easier, not more difficult. And as the court, as Judge Wood pointed out, it's made it quite difficult. The system is quite difficult. And I suggest that this court make it easier. Thank you. Thanks to both counsel in the cases taken under advisory.